## Commonwealth *v.* Patterson, Appellant.

Submitted March 11, 1968. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*John C. Patterson,* appellant, in propria persona.

*Charles B. Watkins* and *Carol Mary Los,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, October 28, 1968:

This appeal results from the denial, without an evidentiary hearing, of a petition for writ of habeas corpus filed in the Court of Oyer and Terminer of Allegheny County. Appellant was indicted and tried on a charge of murder. At his trial before a jury beginning February 26, 1962, appellant pleaded not guilty, but near the close of the trial he was permitted to change his plea to guilty to a charge of murder generally. The matter then proceeded before the court, to determine the degree of guilt, which hearing resulted in a finding of guilty of murder in the first degree. Patterson was sentenced to life imprisonment, and took no appeal.

While we need not, at this time, pass on whether appellant is entitled to the writ of habeas corpus, we do think that the court below erred in dismissing this matter without holding an evidentiary hearing. Among other things, Patterson alleged that his guilty plea was not voluntary. To this end, he asserted as matters of fact, that during a trial recess he and his attorney were passed in the hallway by the district attorney who stated that unless he changed his plea to guilty "it would be too late to save him." Appellant next alleged that his own counsel agreed with this evaluation, and "threatened" Patterson with the electric chair unless the guilty plea was entered.[1]

We recognize the fact that hope for a more lenient sentence can certainly form a valid basis for a guilty plea. However, the plea must nevertheless be the free and uncoerced product of its maker. Thus, it is one thing to say that a man voluntarily chooses to plead

---

[1] Appellant couched this allegation in terms of an ineffective counsel claim, rather than a guilty plea claim. We shall not, however, permit this rather crude petition to blind us to the real nature of Patterson's claim, since appellant was without the aid of counsel when the writ was initially sought.

guilty with the hope of avoiding a death sentence, yet quite another to say that he enters his plea solely out of the fear injected into his mind by what could almost appear, to a man untrained in the law, as some sort of private agreement between opposing counsel to which the defendant himself was not even privy.[2] In order to properly decide exactly what motivated Patterson's plea, therefore, it is necessary for the court below to hold an evidentiary hearing.

This in no way should indicate that we believe appellant was, in fact, coerced into entering his plea. We hold only that, accepting as true the facts alleged in appellant's habeas corpus petition, the plea cannot stand.[3] In *Commonwealth ex rel. West v. Myers,* 423 Pa. 1, 222 A. 2d 918 (1966), appellant also alleged that his guilty plea was entered involuntarily and at the sole urging of counsel. In holding that this allegation was sufficient to justify an evidentiary hearing we said, quite simply: "If accepting the petitioner's allegations as true the writ would issue, then it is incumbent upon the court to hold a hearing affording the petitioner the opportunity to establish the truth of his allegations." *Id.* at 4, 222 A. 2d at 921.[4]

Appellant also alleges, albeit in rather unsophisticated terms (the habeas petition was drawn and filed

---

[2] The Supreme Court of the United States has said: "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States,* 368 U.S. 487, 493, 82 S. Ct. 510, 513 (1962). See also American Bar Association Project on Minimum Standards for Criminal Justice, Pleas of Guilty, p. 30 (Tent. Draft 1967).

[3] On remand, of course, the burden will be on appellant to demonstrate the actual invalidity of his plea. *Commonwealth v. Hill,* 427 Pa. 614, 235 A. 2d 347 (1967).

[4] While the present case, as well as *West,* arose under the old Pennsylvania habeas corpus procedure, the present Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §9, 19 P.S. §1180-9 (Supp. 1967) also requires that the court hold a hearing whenever the petitioner alleges facts sufficient to require

pro se), that a coerced confession caused him to enter the plea. Once again, we cannot say without an evidentiary hearing ever having been held that this allegation is not meritorious. *Commonwealth v. Garrett,* 425 Pa. 594, 229 A. 2d 922 (1967), admittedly requires that the coerced confession be the *primary* motivation for the entry of a plea if that plea is to be overturned because of the confession. Thus, if appellant wishes to attack his confession collaterally, he will have to abandon his allegation that the plea was entered because counsel "threatened" Patterson with the electric chair, and vice versa. However, not since the days of Blackstone have internally consistent pleadings been required in any case, civil or criminal, in this Commonwealth. Since appellant would be entitled to relief by proving the truth of either allegation concerning the reason for his plea, he must be given a hearing.

The order of the Court of Oyer and Terminer of Allegheny County is vacated, and the record is remanded to that court with instructions to hold an evidentiary hearing.

Mr. Chief Justice BELL concurs in the result.

Mr. Justice MUSMANNO did not participate in the decision of this case.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I agree with the majority that the court below erred in dismissing the petition without holding an evidentiary hearing. However, I fail to see why the majority limits that hearing to a consideration of the

---

relief if proven, except if the allegations are patently frivolous and "without a trace of support either in the record or from other evidence submitted by the petitioner."

validity of appellant's guilty plea, alleged to be both involuntary and motivated primarily by a coerced confession. The majority completely ignores the issue upon which argument was had in the court below, that is, whether a hearing under *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774 (1964), was necessitated by appellant's allegation that his confession was involuntary. In essence the majority is foreclosing any attack on the voluntariness of the confession, unless it motivated the guilty plea. I believe that this is incorrect, in view of the fact that this confession was before the court on the issue of degree of guilt, and appellant was found guilty of first degree murder. I believe that appellant is entitled to a new degree of guilt hearing if he can prove his confession involuntary, regardless of whether or not it motivated his guilty plea.

The court below held that the Jackson-Denno hearing was unnecessary for three reasons. These were (1) the statement was not actually a confession, but merely a self-serving declaration of the accidental nature of the killing; (2) appellant took the stand and testified to virtually the same facts recited in the statement, and (3) appellant's plea of guilty, not the result of the challenged statement, constituted a waiver of all nonjurisdictional defects and defenses.

I disagree with the court below on all three grounds.

First of all, regardless of the label attached to the statement, it was obviously detrimental to appellant's case in containing an admission of his entering the house, finding and loading the guns, and pulling the trigger.

Secondly, the fact that appellant's testimony on the stand was virtually identical with the facts in the statement would not obviate the need for a Jackson-Denno hearing. The court below stated: "Our Supreme Court

has held that in a murder trial, in which the defendant's own trial testimony is substantially identical with his description of the crime given in his confession, and would be sufficient in itself to justify a finding of murder in the first degree, an admission of his confession is harmless and without prejudice regardless of whether it was constitutionally invalid evidence; Com. ex rel. Adderley v. Myers, 418 Pa. 366, 211 A. 2d 481 (1965)." The Court's reliance on *Adderley* was misplaced. The invalidity of the confession in *Adderley* stemmed from a violation of *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964). In *Commonwealth v. Padgett,* 428 Pa. 229, 237 A. 2d 209 (1968), we held that violations of *Escobedo* can constitute harmless error under the test of constitutional harmless error of *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824 (1967). At the same time, however, we stated, at page 235, that "admission of a coerced confession requires automatic reversal." The distinction between a coerced confession and one based on a violation of *Escobedo* or *Miranda* is the relative reliability of the fact-finding process at trial when a right has been violated. Finding that the considerations governing automatic reversal as opposed to harmless error under *Chapman* were similar to those governing the retroactivity *vel non* question, *Padgett* indicated that the involuntary confession exclusionary rule, always applied retroactively, see *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966) and *Davis v. North Carolina,* 384 U.S. 737, 86 S. Ct. 1761 (1966), would also require automatic reversal for its violation.

*Padgett,* of course, involved a conviction after a plea of not guilty. The considerations differ markedly when the defendant pleads guilty. Generally as the court below pointed out, a plea of guilty constitutes a waiver of all nonjurisdictional defects and defenses.

*Commonwealth v. Garrett,* 425 Pa. 594, 229 A. 2d 922 (1967); *Commonwealth ex rel. Walls v. Rundle,* 414 Pa. 53, 198 A. 2d 528 (1964). However, we held in *Garrett,* supra, that "a defendant who had pled guilty at trial could nevertheless challenge an allegedly coerced confession collaterally, provided he could prove that the plea was primarily motivated by the confession." *Commonwealth v. Baity,* 428 Pa. 306, 307, 237 A. 2d 172 (1968). This the majority is permitting appellant to do.

However, we also noted in *Garrett,* at page 597, that "the rule relating to the effect of a guilty plea, of course, 'does not mean that a defendant who has pleaded guilty to murder waives the right to object to the admission of improper evidence which will bear on the degree of guilt and the punishment to be imposed.' Commonwealth ex rel. Sanders v. Maroney, 417 Pa. 380, 382, 207 A. 2d 789, 790 (1965); see Commonwealth ex rel. Kern v. Maroney [423 Pa. 369, 223 A. 2d 706 (1966)]." A plea of guilty is sufficient of itself to sustain a conviction for murder in the second degree. However, the burden then rests on the Commonwealth to prove that the offense rises to first degree. *Commonwealth ex rel. Kerekes v. Maroney,* 423 Pa. 337, 340, 223 A. 2d 699 (1966). Here, appellant was convicted of first degree murder. There can be no doubt of the possibility that appellant's statement contributed to the verdict of first degree murder. The statement could be interpreted as revealing a deliberate plan on appellant's part to enter the house, load the guns, and wait for his wife. I have indicated above that the introduction of an involuntary confession cannot constitute harmless error. *Commonwealth v. Padgett,* supra. In view of the inherent untrustworthiness of an involuntary confession, I see no reason for applying a different rule to a confession used

to raise the degree of guilt than to a confession used to prove the guilt itself. The automatic reversal rule must apply in either case.

Nor is Jackson-Denno relief precluded by the fact that the allegedly tainted confession was introduced at what amounted to a degree of guilt hearing before a judge rather than a trial before a jury. The defects inherent in the New York procedure condemned in *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774 (1964) are apparent in the instant case. At the time this case was tried, prior to *Jackson v. Denno,* supra, the Pennsylvania procedure[1] for consideration of voluntariness was the same as the New York procedure described in *Jackson* at page 377: "Under the New York rule, the trial judge must make a preliminary determination regarding a confession offered by the prosecution and exclude it if in no circumstances could the confession be deemed voluntary [footnote omitted]. But if the evidence presents a fair question as to its voluntariness, as where certain facts bearing on the issue are in dispute or where reasonable men could differ over the inferences to be drawn from undisputed facts, the judge 'must receive the confession and leave to the jury, under proper instructions, the ultimate determination of its voluntary character and also its truthfulness.' " That procedure was obviously followed here. When the prosecution sought to introduce appellant's statement, an objection on the grounds of voluntariness was interposed. After hearing briefly the Commonwealth's version of the circumstances under which the statement was taken, the court admitted the statement into evi-

---

[1] See *Jackson v. Denno,* 378 U.S. 368, 410, 416, 84 S. Ct. 1774 (1964), Appendix A to Justice BLACK's concurring and dissenting opinion, for the classification of Pennsylvania as following the New York rule, and the cases upon which such classification is based.

dence, and noted an exception. When evidence as to involuntariness[2] was presented during the defendant's case, the defense moved to strike the statement. The motion was promptly denied, as being a factual issue within the jury's province.

*Jackson* held that the New York procedure of submitting any disputed issue of voluntariness to the jury was defective because it elided a proper determination of voluntariness. *Com. ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A. 2d 426 (1968). The *Jackson* Court pointed out that under either of the permissible procedures, the orthodox rule or the Massachusetts rule: ". . . the judge's conclusions are clearly evident from the record since he either admits the confession into evidence if it is voluntary or rejects it if involuntary. Moreover, his findings upon disputed issues of fact are expressly stated or may be ascertainable from the record. In contrast, the New York jury [substitute judge] returns only a general verdict upon the ultimate question of guilt [substitute 1st degree] or innocence [substitute second degree]. It is impossible to discover whether the jury [judge] found the confession voluntary and relied upon it, or involuntary and supposedly ignored it. Nor is there any indication of how the jury [judge] resolved disputes in the evidence concerning the critical facts underlying the coercion issue. Indeed, there is nothing to show that these matters were resolved at all, one way or another." The procedure is defective in that "the evidence given the jury [judge] inevitably injects irrelevant and impermissible considerations of truthfulness of the confession into the assessment of voluntariness." *Jackson* at page 386.

---

[2] Appellant testified that he was drunk and that he could not read the statement when he signed it since he did not have his glasses.

The fact that the confession was here heard by a judge who had to determine both its truthfulness and its voluntariness rather than by a jury I deem to be a distinction without a difference. This issue was recently considered in *United States ex rel. Spears v. Rundle,* 268 F. Supp. 691, 695 (1967), a well-reasoned opinion by Judge LORD in the United States District Court for the Eastern District of Pennsylvania. We take the liberty to quote at length therefrom: ". . . The question for our decision is whether Jackson requires a separate hearing on the issue of voluntariness where the fact finder is a judge rather than a jury. We think that the decision in Jackson requires such a result. The function of a judge trying a case without a jury is twofold: he is a finder of fact, as well as an arbiter of the law. The responsibility is burdensome. But the task becomes too great when we require a judge who has heard evidence of guilt, to objectively and coldly assess a distinct issue as to the voluntariness of the confession. Objectivity cannot be guaranteed, and reliability must be questioned. Jackson properly construed, prohibits the finder of fact from passing on the voluntariness of a confession since its decision as to voluntariness could be colored by evidence as to guilt. The precise issue presented here was considered in United States ex rel. Owens v. Cavell, 254 F. Supp. 154 (M.D. Pa. 1965). The court held that a judge cannot at the same time hear evidence of guilt, and evidence pertaining to the voluntariness of a confession, without violating the rule of Jackson v. Denno. The court granted the writ in Owens recognizing that a judge, like a jury, could not properly determine voluntariness. The decision found support in the analogous case of Hutcherson v. United States, 122 U.S. App. D.C., 51, 351 F. 2d 748 (1965). In Hutcherson the question arose during a

separate hearing being held by the trial judge, in the absence of a jury, on the issue of voluntariness. He asked questions pertaining to the truth of the facts contained in the confession. The Court of Appeals found it necessary to order a separate hearing to determine the voluntariness question, since the trial judge's determination was obviously tainted with the reliability of the confession. Jackson v. Denno requires a procedure designed to insure a reliable and clear-cut determination of the voluntariness of the confession and the record should show the judge's conclusions in this regard and his findings upon the underlying facts. 378 U.S. at 378, 84 S. Ct. 1774. The relator here has not had such a reliable and clear-cut determination. In fact, the record nowhere discloses *any* determination of the issue of voluntariness. See Sims v. State of Georgia, 385 U.S. 538, 87 S. Ct. 639, 17 L. Ed. 2d 593. Of course, the presence of an explicit judicial determination in the record of Spears' trial would not cure the constitutional defect. When the issue of voluntariness was raised, the court had already heard testimony of guilt. It is impossible to objectively and reliably determine that the confession was voluntary after considering his guilt. Were this merely a hearing on voluntariness, Hutcherson would prevent the judge from deciding the issue. The only method, consistent with Jackson and Hutcherson which the court could have adopted during Spears' trial was upon learning that he placed the confession in issue, to order a separate hearing to be held by another judge unfamiliar with the case and testimony. The reliability of the hearing demanded by Jackson was not present in relator's trial, and therefore, the writ must issue for this reason alone . . ." (Emphasis in original.) Although *Spears* involved a waiver of jury trial entirely, the same principles would apply to a degree of

guilt hearing before a judge.[3] I am not at all certain that *Spears* in interpreting *Jackson,* did not go too far in equating judge with jury by holding that *Jackson v. Denno,* requires a separate judge to hear the question of voluntariness in every case.[4] The minimum required, however, is that the trial judge rule on voluntariness before hearing the contents of the confession, and make a clear-cut, reviewable determination of the issue of voluntariness. This minimum was not met here. I would thus hold that *Jackson v. Denno,* held to be retroactive in Pennsylvania, *Com. ex rel. Butler v. Rundle,* 416 Pa. 321, 206 A. 2d 283 (1965), is applicable to the instant case.

It remains for me to consider whether appellant has alleged facts which warrant a hearing as to whether his confession was constitutionally infirm. In addition to his claim at trial of drunkenness and inability to read, appellant has alleged that he was questioned for seven hours between his arrest at 3:15 A.M. and his confession at 10:20 A.M., that he was not advised of his constitutional rights, that he was not promptly taken before a magistrate, and that he had not slept for over twenty-four hours prior to his confession. If believed, these facts could well bring appellant under the umbrella of *Com. ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A. 2d 426 (1968). I would

---

[3] In essence, a degree of guilt hearing was what was involved in the instant case once the jury was withdrawn after the plea was changed to guilty.

[4] I point out, however, decisions on record in *Owens* and *Spears* in the United States District Courts for the Middle and Eastern Districts of Pennsylvania. These are powerful precedents with which this court would be confronted should the precise issue of whether a separate judge is required arise, since those courts have the power to reverse this Court where constitutional questions are involved. Cf. *Commonwealth v. Negri,* 419 Pa. 117, 213 A. 2d 670 (1965).

thus hold that the facts alleged entitle appellant to a Jackson-Denno hearing.

Nor did the plea of guilty work any procedural waiver of the right to raise the question of involuntariness of the confession, as it did in *Baity,* supra.[5] Appellant preserved his rights by objecting to the introduction of the confession. He should thus be given a Jackson-Denno hearing on the voluntariness of his confession.

[5] The waiver in *Baity* was under the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §4(b)(1), 19 P.S. §1180-4(b)(1) (Supp. 1967): "For the purposes of this act, an issue is waived if: (1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted. . . ."

The Post Conviction Hearing Act did not go into effect until March 1, 1966. Since the instant petition was filed January 24, 1966, it is in habeas corpus rather than under the Act. However, as we pointed out in *Commonwealth v. Snyder,* 427 Pa. 83, 101, 233 A. 2d 530 (1967), ". . . prior to the adoption of the Post Conviction Hearing Act, we consistently held that trial counsel's failure to object waived any claim for coerced confession. See, e.g., Commonwealth ex rel. Storch v. Maroney, 416 Pa. 55, 204 A. 2d 263 (1964)."